# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| KC RAVENS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:13-00870-CV-DGK |
| | ) | |
| MICAH ENERGY CORPORATION and | ) | |
| MIKE SNELL, | ) | |
| | ) | |
| Defendants. | ) | |

## **DENYING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

This lawsuit arises from a guarantee to pay a promissory note. Plaintiff KC Ravens, LLC ("KC Ravens") alleges Defendant Micah Energy Corporation ("Micah") breached an agreement guaranteeing that a $1,000,000 loan made by KC Ravens would be repaid. KC Ravens also alleges that Defendant Mike Snell ("Snell"), who represented himself as Micah's CEO, made negligent and fraudulent misrepresentations to induce KC Ravens into making the loan.

Now before the Court is Defendant Snell's Motion to Dismiss Counts II and III for Lack of Personal Jurisdiction (Doc. 13) brought under Federal Rule of Civil Procedure 12(b)(2). Snell, a non-resident of Missouri, contends that Plaintiff's First Amended Petition (Doc. 1-2) ("the Petition") fails to make a prima facie showing of personal jurisdiction over him. Holding that the Petition sets forth sufficient factual allegations to support a reasonable inference that this Court has personal jurisdiction over Snell, the motion is DENIED.

### Standard

"Personal jurisdiction over a defendant represents the power of a court to enter a valid judgment imposing a personal obligation or duty in favor of the plaintiff." *Viasystems, Inc. v. EBM Pabst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 592 (8th Cir. 2011) (internal quotation

marks omitted). In a diversity action, a federal court may exercise personal jurisdiction over a non-resident defendant only to the extent permitted by the forum state's long-arm statute and the Due Process Clause. *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010). Thus, in order for this Court to exercise personal jurisdiction over Snell: (1) Missouri's Long-Arm Statute must be satisfied; and (2) Snell must have sufficient contacts with Missouri to satisfy due process concerns. *Id.* Although similar in nature, these are separate inquiries. *Viasystems*, 646 F.3d at 593 n.2 (citing *Bryant v. Smith Interior Design Grp.*, 310 S.W.3d 227, 231 (Mo. 2010)).

The plaintiff bears the burden of making a prima facie showing that the court possesses personal jurisdiction over the defendant. *Steinbuch v. Cutler*, 518 F.3d 580, 585 (8th Cir. 2008); *Miller v. Nippon Carbon Co., Ltd.*, 528 F.3d 1087, 1090 (8th Cir. 2008). This showing is made "not by the pleadings alone, but by the affidavits and exhibits" supporting or opposing the motion. *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072-73 (8th Cir. 2004). The evidence required for a prima facie showing is minimal. *Johnson*, 614 F.3d at 794. But, the court views the facts in the light most favorable to the nonmoving party and resolves all factual conflicts in favor of the nonmoving party. *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003).

**Factual and Procedural Background**

Plaintiff KC Ravens is a Kansas limited liability company that is located and operates in Kansas City, Missouri. KC Ravens' sole member is Vince Hodes, a Kansas citizen. Defendant Micah is an Arizona corporation with its principal place of business there. Defendant Snell resides in Texas. KC Ravens filed this lawsuit in the Circuit Court of Jackson County, Missouri, and Snell removed the case to federal court by invoking the Court's diversity jurisdiction.

The Petition contains three claims. Count I alleges Defendant Micah breached its contract to guarantee a $1,000,000 bridge loan. Counts II and III, which are at issue here, respectively allege that Snell tortiously induced KC Ravens into making this loan by engaging in negligent *and* fraudulent misrepresentation.

The Petition claims the Court has personal jurisdiction over Snell because he committed "tortious acts within the state of Missouri, giving rise to the [P]laintiff's causes of action against him." Pet. at ¶ 4. Specifically, the Petition alleges that Snell represented himself as Micah's CEO and acted with Micah's actual or apparent authority; that Micah sought out the loan in Kansas City, Missouri; and that Snell induced KC Ravens into making the loan by making numerous false representations which KC Ravens received while in Kansas City, Missouri. Pet. at ¶¶ 22, 56-7, 66-7. The alleged misrepresentations include the following: that Micah had sufficient capital to guaranty the borrower's obligations; that Micah had accounts with Chase Bank with financial activity in excess of $500,000,000 for the period August 2009 to August 2011; that Micah had extensive experience in providing financial services, engineering analysis, and business development advisory services; and that since 2005 Micah had been a party to over 400 corporate and municipal bond offerings, and since 2007 directly responsible for 200 offers exceeding $50,000,000,000. Pet. at ¶ 57. Other misrepresentations were that Snell had a doctorate in nuclear engineering from MIT; that he dealt heavily with the BUSH 41 Group; and that he previously ran large hedge funds. *Id.* The Petition also alleges that when Snell, or someone acting on his behalf, made these misrepresentations, he knew or should have known that they were false. Pet. at ¶ 60.

Due to these misrepresentations, KC Ravens sustained damages of approximately $2,000,000 in Kansas City, Missouri. Pet. at ¶¶ 64, 74; Aff. at ¶¶ 9-10. Finally, the Petition

3

alleges, and the loan documents confirm, that Snell on behalf of Micah executed a loan guarantee on February 1, 2012, in Kansas City, Missouri. Pet. at ¶ 26, Pet. Exh. B, Pet. Exh. C.

## Discussion

Snell contends that Missouri's Long-Arm Statue is not satisfied, and that he lacks sufficient minimum contacts with Missouri to satisfy due process concerns. The Court finds no merit to either argument.

**A.     Missouri's Long-Arm Statute is satisfied.**

Missouri's Long-Arm Statute provides for personal jurisdiction over any person or firm who, either in person or through an agent, transacts business, makes a contract, or commits a tort within Missouri. Mo. Rev. Stat. § 506.500.1(1)-(3). As a question of Missouri law, the Missouri Supreme Court's interpretation of the statute is binding. *Scullin Steel Co. v. Nat'l Ry. Utilization Corp.*, 676 F.2d 309, 311 (8th Cir. 1982). The Missouri Supreme Court has held that Missouri's Long-Arm Statute covers a tort, such as fraudulent misrepresentation, committed in another state that yields consequences in Missouri. *Bryant v. Smith Interior Design Grp.*, 310 S.W.3d 227, 232 (Mo. 2010) (holding that the statue reaches an out-of-state-resident who defrauds a Missouri resident by sending misleading documents into Missouri). The facts establishing jurisdiction under this "commission of a tort" provision are identical to the merits of the tort claim itself. *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 909 (8th Cir. 2012). Thus, in order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that the defendant has committed the tort alleged in the complaint. *Id*.

The Petition alleges Snell committed two tortious acts in Missouri, negligent and fraudulent misrepresentation. The elements of negligent misrepresentation are: (1) the defendant supplied information in the course of his business or for some other pecuniary interest; (2) due to

the defendant's failure to exercise reasonable care or competence in obtaining or communicating this information, the information was false; (3) the defendant intentionally provided the information for the guidance of a limited group of persons in a particular business transaction; (4) the plaintiff justifiably relied on the information; and (5) as a result of the plaintiff's reliance on the statement, it suffered a pecuniary loss. *Harris v. Smith*, 250 S.W.3d 804, 808 (Mo. Ct. App. 2008). The elements of a fraudulent misrepresentation claim are: (1) the defendant made a representation (2) that was false (3) and material; (4) the defendant knew the statement was false or the defendant was ignorant of its truth; (5) the defendant intended and reasonably contemplated that the statement would be acted on by the plaintiff; (6) the plaintiff did not know the statement was false and (7) relied on the representation being true; (8) the plaintiff had a right to rely on the statement; and (9) the plaintiff relied on the statement and was injured. *Id.*

Viewing the facts in the light most favorable to KC Ravens, the Petition and the various affidavits and exhibits make a prima facie showing that Snell, either negligently or deliberately, supplied materially false information to KC Ravens by claiming Micah had sufficient capital to guaranty the borrower's obligations, as well as extensive experience in providing corporate financial and underwriting services. Additionally, Snell intended KC Ravens to rely on this information in deciding whether to make the loan, and KC Ravens did not know this information was false. KC Ravens also had a right to rely on this information and justifiably did so in making the loan. As a result of relying on this information in making the loan, KC Ravens suffered approximately $2,000,000 in losses. Although these allegations do not specify exactly who made these misrepresentations, on what date, or where they occurred, they are enough to establish a prima facie case of negligent and fraudulent misrepresentation.

The Court is not persuaded by Snells's argument that because the Petition claims he made materially false statements, Federal Rule of Civil Procedure 9(b) requires that the allegations be pled with particularity.[1] While the Court agrees that such allegations must be pled with particularly to avoid a 12(b)(6) motion to dismiss or a 12(e) motion for more definite statement, *In re Bisphenol-A (BPA) Polycarbonate Plastics Prods. Liab. Litig.*, 687 F. Supp. 2d 897, 903-04 (W.D. Mo. 2009), Snell cites no caselaw holding that the Rule 9(b) particularity requirements also apply to a 12(b)(2) motion to dismiss for lack of personal jurisdiction.

Accordingly, the Court holds KC Ravens has made a prima facie showing that Snell committed both torts, thus satisfying Missouri's Long-Arm Statute.

**B.      Snell had sufficient contacts with Missouri to satisfy due process concerns.**

The Court now turns to whether the Court's exercise of personal jurisdiction over Snell offends due process. Due process concerns are satisfied if: (1) Snell had certain minimum contacts with the forum state; and (2) maintenance of the action does not offend traditional notions of fair play and substantial justice; that is, whether assertion of personal jurisdiction is reasonable under the circumstances of the particular case (a "reasonableness" inquiry). *Viasystems*, 646 F.3d at 594; *Speraneo v. Zeus Tech., Inc.*, No. 4:12-CV-578-JAR, 2012 WL 2885592, at *2 (E.D. Mo. July 13, 2012). "Minimum contacts" exist when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The court lacks personal jurisdiction if the defendant's contacts with the forum are "random, fortuitous, or attenuated." *Downing v. Goldman Phipps*, --F.3d--, 2014 WL 4116792, at *5 (8th Cir. Aug. 22, 2014).

---

[1] That is, KC Ravens must specifically allege the contents of the misrepresentations, who made the misrepresentations, and when and where they were made. Fed. R. Civ. P. 9(b); *U.S. ex rel. Raynor v. Nat'l Rural Utils. Co-Op Fin. Corp.*, 690 F.3d 951, 954-55 (8th Cir. 2012).

### 1. Minimum contacts exist.

To establish the requisite minimum contacts, the plaintiff must show either "general" or "specific" personal jurisdiction. *Hogan v. Cosmic Concepts*, No. 4:11CV565, 2011 WL 5976105, at *2 (E.D. Mo. Nov. 30, 2011). Where, as here, the plaintiff claims specific jurisdiction, the plaintiff must show that "the defendant has purposely directed its activities at the forum state, and the cause of action relates to those activities." *Speraneo*, 2012 WL 2885592, at *2. To determine this, courts in the Eighth Circuit use a five factor test which considers: "(1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interests of the forum state in providing a forum for its residents; and (5) the convenience of the parties." *Steinbuch v. Cutler*, 518 F.3d 580, 585 (8th Cir. 2008). The last two factors carry less weight in the analysis. *Downing*, 2014 WL 4116792, at *5.

Applied here, the first, third, and fourth factors weigh heavily in favor of establishing minimum contacts, while the second and fifth factors are inconclusive. The nature and quality of Snell's contacts with Missouri includes sending the allegedly false statements into the state and being physically present in the state for the loan closing—the ultimate goal of his misrepresentations. In undertaking these actions, Snell should have realized that because KC Ravens is a Missouri-based LLC, the brunt of the harm would be felt in Missouri, and thus he should have reasonably anticipated being haled into court there. *See Oriental Trading Co. v. Firetti*, 236 F.3d 938, 941-43 (8th Cir. 2001) (holding making telephone calls and sending faxes into the forum state to convince the plaintiff to provide funds satisfies the minimum contacts requirement); *Bryant*, 310 S.W. at 234 (holding a Missouri court possessed personal jurisdiction over a Florida interior designer who sent misleading documents into Missouri in connection with

work on an apartment located in New York). Although it is unclear from the existing record how many communications Snell made to KC Ravens in Missouri, there is a direct relationship between these contacts and the causes of action here. Indeed, Plaintiff's case will probably succeed or fail based solely on what Snell represented to Plaintiff during these communications. Additionally, Missouri also has a clear interest in providing a forum for KC Ravens, a business operating in the state. The convenience of the parties' factor is neutral; although this forum is obviously convenient for KC Ravens, it is inconvenient for Snell, a Texas resident. On the whole, however, these factors indicate that minimum contacts exist.

This conclusion is consistent with the Eighth Circuit's recent decision in *Myers v. Casino Queen*. In *Casino Queen*, a patron at an Illinois casino who was followed home and robbed in Missouri brought suit against the casino in Missouri for negligence. The Eighth Circuit held that minimum contacts existed because the casino advertised in Missouri and the plaintiff was injured after responding to the casino's solicitation. *Downing*, 2014 WL 4116792, at *6 (discussing the holding in *Casino Queen* with approval). Here the case for personal jurisdiction is even stronger since there is a more direct connection between Snell's contacts and KC Ravens' causes of action.

**2. The assertion of personal jurisdiction is reasonable under the circumstances.**

Since there are minimum contacts here, the Court must consider whether exercising personal jurisdiction over Snell is reasonable under the circumstances of this particular case. The Court finds that it is because numerous state and federal courts have found that the court's exercise of personal jurisdiction over the defendant was fair in similar cases. *See, e.g., Firetti*, 236 F.3d at 943 (holding that basing personal jurisdiction on the fact that the defendant made telephone calls and sent faxes into the forum state did not offend traditional notions of fair play

and substantial justice); *Lewis v. Fresne*, 252 F.3d 352, 358-59 (5th Cir. 2001) (noting a single phone call can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted); *Bryant*, 310 S.W. at 236 (holding the exercise of personal jurisdiction over an out-of-state defendant who sends misleading documents into the state to defraud a Missouri resident is fair).

## Conclusion

For the reasons discussed above, the Court holds it has personal jurisdiction over Defendant Snell. Snell's Motion to Dismiss Counts II and III for Lack of Personal Jurisdiction (Doc. 13) is DENIED.

**IT IS SO ORDERED.**

Date:  September 11, 2014  /s/ Greg Kays
                                                              GREG KAYS, CHIEF JUDGE
                                                              UNITED STATES DISTRICT COURT